IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

STEVEN COLE,

*Petitioner.*

Criminal No.:  ELH-18-0167
Related Civil Case: ELH-22-2020

## MEMORANDUM OPINION

Steven Cole, the self-represented Petitioner, has filed a Motion Under 28 U.S.C. § 2255 (ECF 125, "Petition").  He also seeks discovery.  ECF 127 ("Discovery Motion").  And, Cole seeks the appointment of counsel.  ECF 130 ("Counsel Motion").  The government opposes the Motion and the Discovery Motion (ECF 129).  It filed its opposition before Petitioner requested the appointment of an attorney.  Cole has replied.  ECF 131.

On January 25, 2023, I asked the government to provide a transcript of defendant's guilty plea hearing under Fed. R. Crim. P. 11.  ECF 133.  The government provided the transcript on February 1, 2023.  ECF 137.

No hearing is necessary to resolve the motions.  For the reasons that follow, I shall dismiss the Petition and deny the motions.

### I.  Background

On March 27, 2018, a federal grand jury returned an Indictment charging defendant with Possession with Intent to Distribute oxycodone, in violation of 21 U.S.C. § 841(a)(1) (Count One); Possession of a Firearm In Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c) (1)(A)(i) (Count Two); and Felon In Possession of a Firearm, in violation of 18 U.S.C. § 922(g) (Count Three).

Defendant entered a plea of guilty on December 11, 2018 (ECF 25) to Counts One and Two of the Indictment, pursuant to a Plea Agreement.  ECF 27 (Plea Agreement); ECF 137 (Rule 11 Tr.).  Count One carried a maximum term of imprisonment of 20 years.  For Count Two, the minimum term of imprisonment is five years, with a maximum of life, and the sentence for Count Two must run consecutive to the sentence for Count One.  ECF 30 (Presentence Report), ¶¶ 75, 76.

During the Rule 11 proceeding, ECF 137 at 31-33, and pursuant to the factual stipulation in the Plea Agreement, ECF 27 at 10-11, Cole admitted to the following facts, *id.*:

The Defendant, Steven Cole, age 31, is a resident of Baltimore, Maryland.  On December 5, 2017, Cole was selling opioid narcotics in the area of 2400 Winchester Street in Baltimore, less than a block away from the James Mosher Elementary School and across the street from a baseball field adjacent to the school. On his person, Cole carried a revolver-style handgun.

That same day, while driving in the area of the 2400 block of Winchester Street, Baltimore City Police officers observed Cole approach the passenger-side of a gold color vehicle and open its door. Officers then saw Cole attempt to hand the driver of the vehicle small items that they understood to be narcotics. As the officers drove by, Cole—who was wearing glasses, a grey sweatshirt, and a black puffy jacket—stood straight up and looked in the direction of the officers' vehicle.

The officers then stopped their vehicle and began conducting a U-turn, understanding that they had just interrupted a drug sale.

In response, Cole fled and ran into the stairwell inside the apartment complex located at 2400 Winchester Street. The officers gave chase. One officer proceeded up the complex's north stairwell; the other proceeded up its south stairwell.

The officer proceeding up the south stairwell located Cole's glasses in the stairwell. The officer proceeding up the north stairwell located Cole on the third floor of the apartment complex just a few feet away from the same black puffy jacket that he was previously wearing. Cole had placed it on the ground next to a bag of garbage. The officers then arrested Cole.

At the time Cole was located on [the] third floor of the complex, no one else was present except the arresting officers and Cole. Further, the arrest and search of Cole was captured by the officers' body-worn cameras.

Cole's black puffy jacket, which Cole falsely told officers was not his, was secured by the officers. It was clean and warm to the touch, and contained within it was a black fanny pack that contained a Fie Titanic .32 caliber revolver bearing serial number B23744 and five rounds of ammunition. Prior to its recovery by the police officers, Cole possessed the pistol. Furthermore, Cole possessed this firearm in connection with his illegal business selling opioid narcotics. Cole is prohibited from possessing firearms, having sustained several previous felony convictions, including two past convictions for possession with intent to distribute controlled dangerous substances.

During the search of Cole incident to his arrest, officers also recovered a number of pills—2.99 grams' worth total—which ultimately tested positive for oxycodone. Cole possessed these opioid narcotics for the purpose of selling them to customers. The officers likewise recovered $443.00 from Defendant, which were proceeds from his sale of drugs.

Cole is a social media user, and on March 5, 2018, law enforcement obtained a federal search and seizure warrant for Cole's Facebook and Instagram accounts. Law enforcement reviewed the returns from the warrant and discovered, among other things, (1) several pictures of Cole wearing the same black puffy jacket that he had previously abandoned on the third floor of 2400 Winchester Street and that ultimately contained the fanny pack with the gun in it; (2) pictures of Cole handling what appeared to be large amounts of cash; (3) a picture of OxyContin pills; (4) two pictures of handguns; (5) and various gang-related postings, including posts that stated, respectively, "My religion is Crippin" and "WARNING! CRIPS DO IT BETTER."

The Presentence Investigation Report ("PSR," ECF 30) determined that Cole qualified as a career offender under § 4B1.1 of the U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines"). *Id.* ¶ 27; *see id.* ¶¶ 35, 37 (the predicates). Defendant had a final offense level of 29, *id.* ¶ 30, and a Criminal History Category of VI, because of his career offender status. *Id.* ¶ 41; U.S.S.G. § 4B1.1(b). However, if Cole were not a career offender, he would have had a criminal history category of V. ECF 30, ¶ 40.

The Guidelines for Count One called for a period of incarceration ranging from 151 months to 188 months. *Id.* ¶ 27. With the mandatory minimum sentence of 60 months for Count Two, the Guidelines, in effect, ranged from 211 months to 248 months of incarceration. *Id.*¶ 78. But, because defendant was deemed a career offender who was convicted of an

offense under 18 U.S.C. § 924(c), the Guidelines were increased to 262 months to 327 months of imprisonment. *Id.*; *see* U.S.S.G. §§ 4B1.1(c)(3); § 5G1.2(e); and § 2K2.4(b).

At sentencing on April 22, 2019, the Court determined that defendant qualified as a career offender. And, the Court agreed with the Guidelines sentencing range of 262 to 327 months of imprisonment. ECF 44 (Sentencing Tr.) at 12, 15-22. The government asked the Court to impose a sentence of 120 months' imprisonment. ECF 31 at 1; ECF 66-5 at 28. Defendant did not explicitly ask the Court to impose a particular sentence but indicated that he was seeking two years less than the 10 years sought by the Government. *Id.* at 32-33.

The Court said, *id.* at 42:

This is a very serious case and that's a foremost factor. The reason I agree with everything the government has said about why this is so serious, in a way, and I mean no disrespect, Mr. Cole, but I have to tell you that there is a certain brazenness about this offense, that in broad daylight, on a school day, less than a block from an elementary school, you were dealing, and you had a handgun. And that can be a deadly combination. And children -- who you told me just moments ago you love children, and I have no reason to doubt you -- but children are at risk when people are dealing drugs near school on a school day and they have a gun with them.

The Court outlined defendant's criminal history and noted certain aspects of defendant's history and characteristics, including that he and his son had both been shot and had recovered. *Id.* at 45-46. Moreover, the Court emphasized the "extremely serious" nature of the offense. *Id.* at 46. Nevertheless, the Court imposed a total sentence of nine years' imprisonment—48 months as to Count One and 60 months, consecutive, as to Count Two. *Id.* Defendant received credit from December 6, 2017. *Id.*

Judgment was entered on April 23, 2019. ECF 41. Defendant did not notice an appeal. And, in the Plea Agreement, defendant waived many of his appellate rights.

On August 12, 2022, more than three years after the sentencing on April 22, 2019,

4

Cole filed his Petition.  ECF 125.  He claims that he is actually innocent because he did not, in fact, possess the firearm, despite the fact that, while under oath at his Rule 11 proceeding, he admitted to gun possession.  ECF 125 at 3; ECF 125-1 at 1.  Moreover, defendant claims ineffective assistance of counsel.  ECF 125 at 3.  He seems to request equitable tolling.

## II.  Legal Standard.

A motion filed under 28 U.S.C. § 2255 allows a prisoner in federal custody to challenge the legality of a federal sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a); *see also Hill v. United States*, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255); *United States v. Hodge*, 902 F.3d 420, 426 (4th Cir. 2018); *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015); *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010).

Under § 2255, the Petitioner must establish (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceeding invalid.  *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).  And, "an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting Hill, 368 U.S. at 428).

The scope of collateral attack under § 2255 is narrower than on appeal, and a "'collateral challenge may not do service for an appeal.'"  *Foster v. Chatman*, 578 U.S. 488, 519 (2016) (Alito, J., concurring) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).  A failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim

in a § 2255 motion unless the petitioner can demonstrate "cause and actual prejudice resulting from the errors of which he complains" or "actual innocence." *Pettiford*, 612 F.3d at 280 (citing *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999)); *see Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotations and citations omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Reed v. Farley*, 512 U.S. 339, 354 (1994) (stating that "the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.' "); *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019) (discussing requirements for a claim of actual innocence); *United States v. Linder*, 552 F.3d 391, 397 (4th Cir. 2009).

However, failure to raise on direct appeal a claim of ineffective assistance of counsel is not regarded as procedurally defaulted. *Massaro v. United States*, 538 U.S. 500, 509 (2003). Ordinarily, such claims are not litigated on direct appeal.  Claims of ineffective assistance are cognizable on direct appeal "only where the record conclusively establishes ineffective assistance."  *United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th Cir. 2010); *see also United States v. Ladson*, 793 Fed. App'x 202 (4th Cir. Feb. 12, 2020) (per curiam).  Generally, such claims are litigated in a § 2255 action, to allow for development of the record.  *Massaro*, 538 U.S. at 504-06; *Ladson*, 793 Fed. App'x at 203.

Pursuant to 28 U.S.C. § 2255(b), the court must hold an evidentiary hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief. . . ." *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021); *see United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004).  Generally, a district court has discretion as to whether to hold a hearing, but "a hearing is required when a movant presents a colorable Sixth Amendment claim

showing disputed facts beyond the record, or when a credibility determination is necessary to resolve the claim[.]" *Mayhew*, 995 F.3d at 176-77.  If the district court "denies relief without an evidentiary hearing," the appellate court will "construe the facts in the movant's favor." *United States v. Akande*, 956 F.3d 257, 261 (4th Cir. 2020); *see also United States v. Turner*, 841 F. App'x 557, 559 (4th Cir. 2021) (same).

In my view, no hearing is warranted here.  The Petition and related filings conclusively show that Cole is not entitled to relief.

### III. Discussion

#### A. Timeliness

Under 28 U.S.C. § 2255(f), a post-conviction petition must be timely filed.  The statute requires that a motion under § 2255 must be filed within one year. *Id.* Under § 2255(f), that one-year period runs from the latest of: (1) the date on which the conviction became final; (2) the date on which the "impediment to making a motion created by governmental action . . . is removed," if the movant was prevented from making his motion by governmental action; (3) the date on which the right asserted was recognized by the Supreme Court, if that newly-recognized right has been made retroactive to cases on collateral review; or (4) the date on which the facts supporting the claims could have become known through the exercise of due diligence. *See* 28 U.S.C. § 2255(f)(2)-(4).

As noted, Cole entered a plea of guilty on December 11, 2018.  ECF 25; ECF 137.  He was sentenced on April 22, 2019, and judgment was entered on April 23, 2019.  ECF 41.  No appeal was noted.

Where, as here, the petitioner does not appeal, his conviction becomes final upon the expiration of the period for filing a timely notice of appeal, *i.e.*, fourteen days after the entry of

judgment. Fed. R. App. P. 4(b)(1)(A). Accordingly, Cole's conviction became final on May 7, 2019—fourteen days after entry of the judgment on April 23, 2019. Thus, pursuant to 28 U.S.C. § 2255(f), a timely § 2255 motion would have been due by May 7, 2020—one year after Defendant's conviction became final.[1]

Equitable tolling is available in "those 'rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party and gross injustice would result.'" *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (en banc) (quoting *Rouse v. Lee*, 399 F.3d 238, 246 (4th Cir. 2003) (en banc)) (additional citations omitted); *see Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2001); *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). For equitable tolling to apply, an otherwise time-barred petitioner must demonstrate "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing.'" *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). A petitioner need show only "reasonable diligence"; there is no requirement for "maximum feasible diligence." *Holland*, 560 U.S. at 653 (citation omitted).

Notably, Cole does not identify any extraordinary circumstances beyond his control or external to his conduct that justify equitable tolling of the time limitation. *See Rouse*, 339 F.3d at 246 ("Equitable tolling is appropriate when, but only when, extraordinary circumstances beyond [the petitioner's] control prevented him from complying with the statutory time limit."). According to defendant, the "reason for this issue not being brought up [in a timely fashion] is because [his] attorney was ineffective." ECF 125 at 3. But, ineffective assistance of counsel ordinarily does not warrant equitable tolling. *See Harris*, 209 F.3d at 331.

---

[1] The government asserts that the Petition was due by April 23, 2020. ECF 129 at 7. I disagree.

In any event, Cole does not contend that his counsel's alleged ineffective assistance caused his delay in filing his § 2255 motion.  Nor has he identified a right newly recognized by the Supreme Court and made retroactive to his case on collateral review.  Moreover, there are no newly discovered facts that support the Petition.

Accordingly, equitable tolling does not apply.  It follows that the Petition is barred by the limitations period set forth in 28 U.S.C. § 2255(f)(1).  On this basis, the Petition is subject to dismissal.

## B.  The Merits

Even if the Court were to consider the merits of the Petition, the claims would fail.

The Sixth Amendment to the Constitution guarantees a criminal defendant the right to the effective assistance of competent counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, ––– U.S. ––––, 137 S.Ct. 759, 775 (2017). Ineffective assistance of counsel is a well recognized basis for relief under collateral attack. *See generally Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

To mount a successful challenge under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88; *see Williams v. Taylor*, 529 U.S. 362, 390 (2000); *United States v. Palacios*, 982 F.3d 920, 923 (4th Cir. 2020); *United States v. Akande*, 956 F.3d 257, 260 (4th Cir. 2020); *United States v. Winbush*, 922 F.3d 227, 229 (4th Cir. 2019); *United States v. Hall*, 771 F. App'x 226, 227 (4th Cir. 2019) (per curiam); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show

that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 137 S.Ct. at 775; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill*, 474 U.S. at 57; *Winbush*, 922 F.3d at 229; *Powell*, 850 F.3d at 149*; United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *United States v. Dyess*, 730 F.3d 354, 361 (4th Cir. 2013); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see also United States v. Richardson*, 820 F. App'x 225, 226 (4th Cir. 2020) (per curiam); *United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013). The petitioner must prove his claim by a preponderance of the evidence. *Pettiford*, 612 F.3d at 277; *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958); *Mayhew*, 995 F.3d at 176.

The first *Strickland* prong, known as the "performance prong," relates to professional competence. The petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688; *see Harrington v. Richter*, 562 U.S. 86, 104 (2011); *Richardson*, 820 F. App'x at 225; *Powell*, 850 F.3d at 149; *Hall*, 771 F. App'x at 227. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

The Supreme Court has recognized that the "first prong sets a high bar." *Buck*, 137 S.Ct. at 775; *see also Powell*, 850 F.3d at 149. In *Padilla*, the Court stated, 559 U.S. at 371: "Surmounting Strickland's high bar is never an easy task." Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck*, 137 S.Ct. at 775 (citation omitted). Consequently, the performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008)

(quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)).

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687).  Notably, "the *Strickland* standard must be applied with scrupulous care," because "the standard of judging counsel's representation is a most deferential one." *Richter*, 562 U.S. at 105; *see United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019).  Indeed, "[k]eenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland*, 446 U.S. at 689); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Richter*, 562 U.S. at 104; *Richardson*, 820 F. App'x at 225-26; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).

Under the second *Strickland* prong, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S.Ct. at 776; *Lafler*, 566 U.S. at 163; *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. However, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before

examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court...to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

In this case, Cole entered a plea of guilty.  A guilty plea is a "waiver of [a defendant's] right to trial before a jury or a judge." *Brady v. United States*, 397 U.S. 742, 748 (1970). It is "a grave and solemn act . . . ." *Id.*  However, for a guilty plea to be valid, it must be voluntary.  *Id.* And, "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Id.*; *see Bradshall v. Stumpf*, 545 U.S. 175, 183 (2005) (same).  Thus, the plea of guilty must reflect an "intelligent choice among the alternative courses of action open to the defendant."  *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

A plea cannot be "voluntary in the sense that it constituted an intelligent admission . . . unless respondent received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)).  However, the Supreme Court clarified in *Marshall v. Lonberger*, 459 U.S. 422, 436 (1983), that "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Marshall*, 459 U.S. at 436 (1983) (quoting *Henderson*, 426 U.S. at 647) (internal quotations omitted).

The Sixth Amendment right to counsel extends to the plea-bargaining process. *McMann*

*v. Richardson*, 397 U.S. 749, 771 (1970); *United States v. Murillo*, 927 F.3d 808, 815 (4th Cir. 2019); *Hall*, 771 F. App'x at 227; *see also Frye*, 566 U.S. at 140-44; *Lafler*, 566 U.S. at 162. Notably, a plea agreement "is an essential aspect of the administration of criminal justice . . . ." *United States v. Lewis*, 633 F.3d 262, 269 (4th Cir. 2011).

In federal court, the plea process is governed by Rule 11 of the Federal Rules of Criminal Procedure.  In *Hill v. Lockhart*, *supra*, 474 U.S. 52, the Supreme Court explained that, "where ... a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness [and intelligence] of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  *Id.* at 56 (citation omitted). And, in assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that counsel's actions fell within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

The prejudice prong of the *Strickland* test is slightly modified in the context of plea bargaining. *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988). In *Hooper*, the Fourth Circuit explained, *id.* (quoting *Hill*, 474 U.S. at 59):  "When a defendant challenges a conviction entered after a guilty plea, [the] 'prejudice' prong of the [*Strickland*] test is slightly modified. Such a defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"  *Accord Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000); *see also Richardson*, 820 F. App'x at 226.  And, the defendant has the burden to establish a reasonable probability that, but for counsel's deficient performance, he would not have entered a plea of guilty. *Murillo*, 927 F.3d at 817.

*Hooper*, 845 F.2d 471, is illustrative.  There, the defendant, who had a history of mental illness, pled guilty in a Virginia court to second-degree murder. *Id.* at 472. However, his lawyers

failed to obtain a psychiatric evaluation before the defendant's entry of the guilty plea. *Id.* Hooper subsequently filed a habeas corpus petition, which the district court denied. *Id*. On appeal, the Fourth Circuit noted that the "burden is on Hooper to establish a reasonable probability that if his lawyers had obtained a psychiatric report, he would have rejected the plea agreement" and gone to trial. *Id.* at 475.

The Fourth Circuit examined a psychiatric report obtained after the guilty plea against the background of the circumstances Hooper faced at the time he decided to plead guilty. The Court was not persuaded that the report provided evidence sufficient to establish a reasonable probability that Hooper would have declined the plea agreement and gone to trial, even if his counsel had obtained a psychiatric report at the time. *Id.* at 475-76. Although the Court concluded that the failure to obtain a psychiatric report fell below the objective standard of reasonableness established by *Strickland*, it was satisfied that Hooper was not prejudiced because there was no reasonable probability that the deficiency changed the outcome of the proceeding.

Also of relevance here, when a criminal defendant claims ineffective assistance of counsel after pleading guilty, he is "bound," absent clear and convincing evidence to the contrary, "by the representations he made under oath during a plea colloquy." *Fields v. Attorney Gen. of Md.,* 956 F.2d 1290, 1299 (4th Cir. 1992); *see Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977); *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005). Indeed, "a defendant's solemn declarations in open court affirming a [plea] agreement ... 'carry a strong presumption of verity.'" *Lemaster*, 403 F.3d at 221 (quoting *Blackledge*, 431 U.S. at 74). Therefore, conclusory allegations in a § 2255 petition that are contrary to testimony provided at a Rule 11 hearing are "palpably incredible and patently frivolous or false." *Lemaster*, 403 F.3d at 222. As the Fourth Circuit has explained, "courts must be able to rely on the defendant's statements made under

oath during a properly conducted Rule 11 plea colloquy." *Id. See also Blackledge,* 431 U.S. at 74; *White*, 366 F.3d at 295-96; *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003).

Moreover, the Fourth Circuit has acknowledged that, on post-conviction, a defendant who has pled guilty "has an incentive to claim, in retrospect, that the result of the plea process would have been different regardless of whether that claim is, in fact, true." *Murillo*, 927 F.3d at 815; *see Lee v. United States*, ⸺ U.S. ⸺, 137 S.Ct. 1958, 1967 (2017) ("Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have [pled] but for his attorney's deficiencies."). Therefore, "to prevent criminal defendants with bargainer's remorse from simply claiming they would not have taken a deal but for a bit of bad advice," the defendant must "provide evidence of [his] sincerity." *Murillo*, 927 F.3d at 816. In particular, the defendant "must point to evidence that demonstrates a reasonable probability that, with an accurate understanding of the implications of pleading guilty, he would have rejected the deal." *Id.*

In the context of a plea bargain, "the defendant is the master of the outcome." *Murillo*, 927 F.3d at 815. Therefore, "[t]he prejudice analysis in the context of the plea-bargaining process requires a fact-based evaluation of the weight of the evidence." *Id.* To this end, "plea agreement language and sworn statements must be considered in their context[.]" *Id.* at 817; *see Lemaster*, 403 F.3d at 221-22.

The government asserts that "there is no question that the plea hearing on December 11, 2018 complied with all requirements of Fed. R. Crim. P. 11 to ensure that Defendant's plea of guilty was well informed." ECF 129 at 8. Initially, it did not provide a transcript of the plea hearing. Therefore, I could not verify the assertion. Accordingly, I directed the government to submit the transcript of the Rule 11 hearing. ECF 133. And, the transcript has since been

provided.  ECF 137.

A review of the Rule 11 transcript reveals that the defendant understood the charges; was fully satisfied with services of his lawyer; was apprised of his various constitutional rights; he waived any defenses that he may have had; and he knowingly and voluntarily waived his constitutional rights.  ECF 137, Passim.  Cole also agreed that the factual summary presented by the government was accurate.  *Id.* at 33.  And, the defendant made clear that he desired to plead guilty, *id.* at 33, and that he did so freely and voluntarily.  *Id.* at 30, 33.

### C.  Counsel Motion

The Court is unaware of any statutory or constitutional requirement for the appointment of counsel here.  Nor is there a Sixth Amendment right to counsel in collateral proceedings. *Pennsylvania v. Finely*, 481 U.S. 551, 555 (1987).

It is evident that Mr. Cole is quite capable of expressing his arguments.  Therefore, I shall deny the Counsel Motion.

### D.  Discovery Motion

Pursuant to Rule 6(a) of the Rules Governing § 2255 Proceedings, the Court may authorize discovery "if, and to the extent that, the judge in the exercise of [the Court's] discretion and for good cause shown grants [the defendant] leave to do so, but not otherwise."  Good cause is shown when a petitioner makes specific allegations and shows that if the facts are fully developed the petitioner may be entitled to relief.  *United States v. Roane*, 378 F.3d 382, 403 (4th Cir. 2004) (citing *Bracy v. Gramley*, 520 U.S. 899, 908-909 (1997)).

Defendant has not established good cause.  Therefore, I shall deny his Discovery Motion (ECF 127).

## IV.  Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant as to a post conviction claim.

A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). In other words, unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, ___ U.S. ___, 137 S. Ct. 759, 773 (2017). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

As indicated, a COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Cole has not made a substantial showing of the denial of his constitutional rights.  Therefore, I decline to issue a COA.[2]

An Order follows, consistent with this Memorandum.


Date:   February 2, 2023                                    _____/s/_____
                                                            Ellen L. Hollander
                                                            United States District Judge

---

[2] The denial of a COA by the district court does not preclude Cole from seeking a COA from the appellate court, *i.e.*, the United States Court of Appeals for the Fourth Circuit.